■ MERRILL LYNCH EQUITY MANAGEMENT, INC., Now Known as MERRILL LYNCH CREDIT CORPORATION, Respondent, v STEPHANIE S. KLEINMAN et al., Defendants, and PHH US MORTGAGE CORPORATION, Appellant. [668 NYS2d 726] —Carpinello, J. Appeal from an order of the Supreme Court (Kramer, J.), entered March 6, 1997 in Schenectady County,

---

which denied a motion by defendant PHH US Mortgage Corporation to, *inter alia*, cancel and discharge a certain mortgage held by plaintiff.

This action involves a dispute between two mortgagees. On February 1, 1989, plaintiff accepted a $38,000 mortgage from defendants Harry C. Kleinman and Stephanie S. Kleinman to secure a revolving credit line in an amount not to exceed $38,000. Unlike a traditional mortgage which typically begins with a single advance of funds and is amortized over the life of the loan by regular monthly payments which continually decrease the outstanding principal balance, a credit line mortgage anticipates numerous advances, payments and readvances which may frequently bring the loan to a zero balance during the time that the credit line is outstanding.

This distinction sets the stage for the instant dispute. On June 22, 1992 defendant PHH US Mortgage Corporation (hereinafter US Mortgage) loaned the Kleinmans the sum of $202,300 secured by a mortgage on the same premises which was then encumbered by plaintiff's mortgage. By letter dated June 26, 1992, checks were forwarded to plaintiff on behalf of US Mortgage totaling $35,578.59 along with a cover letter indicating that the tendered funds represented "payment of the Mortgage" and requesting that plaintiff "send the satisfaction of mortgages [*sic*] to the undersigned". No satisfaction was sent nor was the credit line closed as of June 21, 1993; plaintiff wrote to the Kleinmans indicating that although the account had "no principal balance", it was still open and active. The following day, contemporaneous with a further advance of funds by US Mortgage, the attorneys for its title company *again* wrote to plaintiff requesting that the credit line mortgage be closed and that plaintiff "forward a discharge of mortgage". The twice requested satisfaction/discharge was not provided, the Kleinmans thereafter reaccessed the credit line and then defaulted on both obligations, forcing plaintiff and US Mortgage to commence dueling foreclosure actions in which each contends that its mortgage is a first lien on the premises.

To justify its conduct, plaintiff argues that because of the unique nature of credit line mortgages, it must insist upon strict compliance with the specific provisions of the borrower's credit line agreement—that the account could only be closed upon notice from the *borrowers* accompanied by outstanding credit cards and unused checks. Plaintiff contends that it had "no choice" but to keep the account open under the instant circumstances or risk being sued by borrowers for improper mortgage cancellation. While the provisions of the credit line

agreement would clearly be binding as between plaintiff and the Kleinmans, we note that the specific provisions relied upon by plaintiff were not set forth in the mortgage and, consequently, US Mortgage would have no record knowledge of them.

Plaintiff also relies on RPAPL 1921 which, prior to an amendment effective in 1994, required that a proposed satisfaction piece accompany any payoff funds in order for a mortgagee to be obligated to satisfy a mortgage. In this regard, we note that the facts of the this case are almost identical to those in *Barclay's Bank v Market St. Mtge. Corp.* (187 AD2d 141), the sole exception being that in *Barclay's* the second mortgagee *did* include a proposed satisfaction piece with its payoff check. In that case, this Court rejected the credit line mortgagee's argument that it was not required to satisfy its mortgage (*id.*, at 146). Needless to say, plaintiff relies heavily on the fact that the *Barclay's* second mortgagee forwarded a proposed satisfaction with the payoff funds. We are unpersuaded by plaintiff's argument that this distinction mandates a different result. We read RPAPL 1921 as merely providing a mortgagor or other interested party with a statutory remedy for obtaining a satisfaction of mortgage. We do not view the statute as proscribing the only scenario under which a mortgagee might become so obligated.

It is a well-settled principle of common law that where the amount of the debt is not in dispute, "the party making the tender [has] a legal right to insist as a condition of payment that the party to whom the tender was made do the things demanded, and for that reason coupling such condition to the acceptance of the tender [does] not destroy its effect" (*Halpin v Phenix Ins. Co.*, 118 NY 165, 177). Here, there can be no dispute that US Mortgage tendered the amount then due on the mortgage on the condition that it receive a satisfaction. We will not permit plaintiff to contend that it could not understand the condition on which the money was tendered. Plaintiff was bound either to reject the check or, by accepting it, to accede to US Mortgage's terms as the money tendered belonged to US Mortgage, and it had the right to say on what condition it should be received (*see, Anderson v Wood, Dolson Co.*, 212 App Div 483, 486; *see also, Garden State Yarn Corp. v Rosenthal & Rosenthal*, 99 AD2d 721, 722). " ' "Always the manner of the tender and of the payment shall be directed by him that maketh the tender or payment and not by him that accepteth it" ' " (*Anderson v Wood, Dolson Co., supra*, at 486, quoting *Pinnel's Case*, 5 Co 117).

US Mortgage's intentions having been clearly stated not once but twice, it would clearly be inequitable for this Court to sanction plaintiff's retention of US Mortgage's funds without requiring that it also satisfy the mortgage.

Mikoll, J. P., Crew III, Yesawich Jr. and Spain, JJ., concur. Ordered that the order is reversed, on the law, with costs, and defendant PHH US Mortgage Corporation's motion to discharge mortgage granted.